# A. VINCENTE & COMPANY, Complainants,

## v.

# CITY OF SAN JUAN, etc., Defendants.

---

OPINION ON DEMURRER TO BILL FOR INJUNCTION.

1. The action of the insular Treasurer in approving or disapproving a municipal ordinance relating to the financial affairs of the municipality is not final. His acts are of a ministerial character, and are not beyond the control of the courts in a proper case.

2. The autonomic Constitution of 1897 did not repeal the municipal law limiting the levying of a consumption tax to such articles as were consumed in the town levying the tax, and limiting such tax to 25 per centum of the value of the article.

3. A municipal ordinance clearly unreasonable and oppressive is void. One levying a consumption tax on salt on hand at its passage, and nearly to its value, and which to a material extent is not consumed within the limits of the municipality, is void. Any interested party may enjoin a void ordinance.

December 28, 1900.

---

*Mr. F. H. Dexter,* solicitor for complainants.

*Messrs. Pettingill & Keedy,* solicitors for defendants.

HOLT, Judge, delivered the following opinion:

This is an action to enjoin the defendants from enforcing an ordinance of the city of San Juan, levying a consumption tax upon foreign salt imported by the complainants before its pass-

age. It was imported in May, June, and July, 1900, the custom duties paid, and the ordinance was not enacted until August 20th, 1900. The tax levied is 60 cents upon each 46 kilograms, or about 100 pounds. This was about three fourths of its value. The ordinance by its terms applied to stock then on hand. The evidence shows that of the about 8,311 quintals imported by the complainants, and upon which there was then no tax, 5,600 quintals were sold by them to parties outside, and consumed outside the city. The parties have been fully heard, both orally and by brief. The discussion has taken a wide range. Many difficult questions have been presented and ably argued by counsel. Much labor has been given to their examination by the court. They involved the consideration of many provisions of the various Spanish laws existing in this island, of various military orders yet in force under the act of Congress of April 12th, 1900, and, in fact, of the mixed system of law yet in force here, so far as it relates to the questions presented.

The complainants move for a temporary injunction, and the defendants demur to the bill. The jurisdiction of this court is conceded; and if, as the complainants contend, the ordinance is void, equity may, at the instance of anyone injuriously affected, enjoin its enforcement. This, of course, involves its validity, which is assailed on various grounds, most of which, owing to the court's conclusion as to one of them, would not now be mentioned but for the earnestness, pro and con, with which they have been discussed. It is said the body formerly existing here, known as the "Diputación Provinciál," and which was abolished by military order 17 of November 28th, 1898, had the power to disapprove the city ordinances, and that their duties were, by military order, devolved upon the insular Treasurer. This is denied. The action of the council was in some respects formerly subject to revision by the diputación. The latter had power

Vincente & Co. v. San Juan.

to revise assessments,—the registration of residents,— and regulate the budget in so far as to have the municipal resources equal the expenses. It is by no means certain that it had the power now claimed; but if so, it was not transferred to the Treasurer by the order above named. He was, by it, given charge of the assets and liabilities of the diputación, the collection of its debts, and the liquidation of its assets. It is true, military order 102, in assigning to the civil officers the duties then performed by the military government, provided that the "financial affairs of municipalities . . . are assigned to the Treasury Department;" and that subsequent orders speak as if all the duties of the deputation had been conferred upon the Treasurer; and the council in this case granted the appeal to him, upon which he held the ordinance void. But conceding the deputation had the power to annul an ordinance, also that by military order the Treasurer took the place, in all respects, of the deputation, yet its action was not by the terms of the municipal law exclusive or final; and it is unreasonable to suppose this as to the Treasurer, who is a ministerial, and not a judicial, officer. His action in the matter does not in any event, therefore, render the question *res judicata,* and place the question beyond the control of the courts.

It is said the ordinance in question is void because in violation of military orders yet in force. This is denied. Also because it is contrary to the municipal law that went into force in 1896, and by which a consumption tax was confined to what was consumed in a town, and could not exceed 25 per cent of its value.

Upon the other side it is contended that the Constitution granted by Spain on November 25th, 1897, gave autonomy to the municipal governments, provided that they should frame their own laws as to their finances, and raise revenue to meet their expenses without limitation, save the means adopted should

Vincente & Co. v. San Juan.

be compatible with the general system of taxation of the island. In reply it is said this was a political document or colonial Constitution, and therefore ceased to have force when the United States acquired the island.

It is well settled that by international law the municipal laws of a country, upon a change of sovereignty,—to wit, those relating to private rights,—remain in force unless changed by the new sovereignty. The change of government annuls laws merely political,—dissolves the people's relation with their former sovereignty, and attaches them to the new; but private rights are not affected.

The first general order of the American Army issued in this island, dated October 18th, 1898, conformed to this rule. The act of Congress of April 12th, 1900, known as the Foraker law, organizing civil government here, retained the laws of Porto Rico save so far as altered by military orders, and not inconsistent with the United States laws applicable here.

Conceding that so much of the Constitution of 1897 as was not political is yet in force, yet the provisions relied upon as to municipalities are of a general character, and the same article provides that the municipal laws then in force and not in conflict therewith shall remain so. The conclusion is that the provisions of the municipal law referred to are yet in force.

By military general order 39 of December 30th, 1898, bread and meat were exempted from municipal taxation; a license tax authorized upon liquors and tobacco of all forms, and if this failed to supply a deficiency in a municipal "budget," the municipal council could adopt such means as might be advisable and according to law to do so. By a supplement to this order, dated January 5th, 1899, the consumption tax on flour was abolished; and it further provided that no consumption taxes should be levied save upon liquors, tobacco, and luxuries. It is said, how-

Vincente & Co. v. San Juan.

ever, this was revoked by general order 86 of April 24th, 1900, because it provided that consumption taxes upon certain named necessaries of life were thereby discontinued, thereby recognizing the existence of consumption taxes on other articles than those authorized in said supplemental order.

It must be remembered these orders, although generally well framed, were not always so with legal precision or from legal training. Order 86 may have been merely by way of emphasis to the then existing order as to the particular articles named in it. It could only be regarded as a repeal by implication. Applying the legal rule, such repeals are not favored, and should not be inferred in this instance.

The conclusion is that both by the municipal law and the military orders this ordinance is invalid. But, conceding this conclusion erroneous, there is another reason which, to my mind, renders it so beyond doubt. It not only taxes nearly to the value of the salt, but it applies to stock on hand, and not merely to future purchases. True, it is a consumption tax, but it does not address itself to the court's kind consideration, because it does not seem equitable to tax the party, when he bought without supposing it would be so taxed. It affects commercial operations undertaken before its adoption. In a sense it is retrospective legislation. True, such legislation is not absolutely forbidden by law unless it impairs contract obligation, or is, in effect, an *ex post facto* law, or bill of attainder; but unless the legislative intent is clearly otherwise, it will be given as circumscribed a construction as is possible, and regarded as prospective only. Even when clearly retrospective it is not regarded with favor, and will not be given a retroactive effect by mere construction.

But this ordinance goes much further than being in a sense retrospective. It provides for a city consumption tax without regard to where the salt is consumed. The greater portion may

Vincente & Co. v. San Juan.

not be consumed in San Juan, but where there may be another consumption tax, and the evidence in this case shows the greater portion of the complainants' salt was sold, and consumed elsewhere. It authorizes confiscation of the property, practically, which the owner had when it was enacted; and instead of being calculated to raise revenue its enforcement would confiscate and exclude. The municipal authorities acted from praiseworthy motives. The plain inference from the record is that they intended to protect home industries, thereby increasing their production for the benefit of all, and rendering the island self-supporting; but in the effort they clearly went beyond the pale of the law.

The city council has general power to pass ordinances to raise revenue; its power to enact ordinances for the government of the city is implied from its existence, subject, of course, to any higher legislative power; but they must be reasonable, and not oppressive,—not counter to that spirit of justice which enters into the framework of representative government.

This is elementary. The decisions are all one way, and it is needless to cite many; showing that when clearly unreasonable a court should declare them void. Cooley, Const. Lim. 4th ed. 243; 17 Am. & Eng. Enc. Law, p. 248. To enforce this one against the complainants would clearly be in violation of common right and justice.

The demurrer is overruled and the injunction asked is granted upon their giving bond in the sum of $2,000, conditioned according to law; and an order will be entered to this effect.